IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AGCS MARINE INSURANCE COMPANY and THE DOW CHEMICAL COMPANY, <br><br> *Plaintiffs* <br><br> v. <br><br> STOLT TANKERS B.V., <br><br> *Defendant.* | CIVIL ACTION NO. 4:22-00270 |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs AGCS Marine Insurance Company and The Dow Chemical Company (hereinafter "Plaintiffs") by their undersigned attorneys, Hartline Barger LLP, for their Complaint, allege on information and belief as follows:

### GENERAL ALLEGATIONS
### APPLICABLE TO ALL CAUSES OF ACTION

### JURISDICTION, VENUE AND PARTIES

1. This Court has subject matter jurisdiction as the claims arise under the Court's maritime jurisdiction pursuant to 28 U.S.C. section 1333 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. At all times material hereto, Plaintiff AGCS Marine Insurance Company (hereinafter "AGCS") was and is a corporation existing under and by virtue of the laws of Illinois with its principal place of business at 225 W. Washington Street, Suite 1900, Chicago, Illinois 60606, and who insured nonparty Blue Cube Operations LLC and its corporate affiliatees (hereinafter, collectively "Blue Cube"), who was and is one out of the two owners of the Shipments which are the subject matter of this action.

1

3. At all times material hereto, Plaintiff The Dow Chemical Company (hereinafter "Dow") was and is a corporation existing under and by virtue of the laws of Delaware with its principal place of business at 2040 Dow Center, Midland, MI 48674, and who was and is one out of the two owners of the Shipments which are the subject matter of this action.

4. Defendant Stolt Tankers B.V. ("Stolt") is a corporation or other business entity organized and existing under and by virtue of the laws of the Netherlands, with its principal place of business at Westerlaan 5, 3016 CK Rotterdam, the Netherlands, and is engaged in business as a charterer of vessels and/or carrier of merchandise by water for hire, and operates a fleet of tanker vessels, and who does business in the State of Texas and in the Southern District of Texas.

5. Venue is proper here within the applicable maritime legal precedents and/or within the meaning of 28 U.S.C. § 1391(b) because the Shipments which are at issue in this matter were booked for transportation from Freeport, Texas, and were accepted by Stolt and loaded aboard Stolt's vessel, the M/V Stolt Groenland, at the port of Freport, Texas. The Southern District of Texas is the most convenient forum because several important witnesses are located in this District.

## THE SHIPMENTS

6. Plaintiffs refer to the attached Schedule A of claims (hereinafter "Schedule"), and plead that on or about the dates listed on the Schedule, there was shipped by the Shippers identified on the schedule, and delivered to the Defendant Stolt, and Defendant Stolt's vessel, the M/V Stolt Groenland, at Freeport, Texas, various consignments of cargoes identified on the Schedule, then being in good order and condition (the "Shipments"). In

consideration of certain agreed freight charges thereafter paid or agreed to be paid, Defendant Stolt agreed to transport and carry and/or broker and/or forward and/or otherwise arrange for transport of the Shipments aboard the M/V Stolt Groenland to the destination ports identified on the Schedule, and there deliver the Shipments to Plaintiff and/or to Plaintiff's insured or its designee in the same good order and condition as when received.  The Shipments are described in the Bills of Lading, Charter Parties and/or Contracts of Carriage issued by or agreed to by Stolt bearing Bill of Lading Numbers and/or Dates identified on the Schedule and/or such other documents as may be deemed to constitute receipts or parts of the contracts of carriage.

7. The Bills of Lading, Charter Parties and/or Contracts of Carriage, contained one or more agreements to arbitrate all disputes.

8. On or about January 16, 2021, while in transit from Freeport, Texas to Ulsan, South Korea, a separate cargo of styrene monomer aboard the the M/V Stolt Groenland (not a cargo identified on the attached Schedule and the loss of which is not claimed for herein) overheated, exploded and caught fire (said event shall be referred to herein as "the Explosion"), causing extensive loss and physical damage to the Shipments, as well as requiring Plaintiffs to expend further sums to mitigate the loss and damage to those portions of the Shipments which could be recovered from the wreck.

9. The type of styrene monomer cargo which exploded shall hereinafter be referred to as the "Exploding Cargo."

10. Thereafter, the Shipments were not delivered at destination in the same good order and condition as received, but on the contrary, significant portions of the Shipments were lost in the explosion, and other portions of the Shipments were damaged and/or deteriorated and/or otherwise tainted and damaged by the heat of the explosion and fire aboard the vessel,

and/or were otherwise damaged, all in violation of the obligations of Defendants' obligations as carriers and/or brokers and/or forwarders and/or otherwise.

11. Plaintiff AGCS, insured certain of the Shipments, as indicated in the attached Schedule, against loss and damage. By reason of the loss described above, AGCS was obliged to pay and actually paid the claim to their insureds, the shippers and owners of the Shipments owned by its insured, and incurred substantial additional other expenses, for which Stolt is legally liable. AGCS brings this action on its own behalf and as agent or trustee on behalf of all parties who may be or become interested in the subject Shipments as their respective interests may ultimately appear, and Plaintiffs are duly entitled to maintain this action.

12. Plaintiff Dow owned certain of the Shipments, as indicated in the attached Schedule, against loss and damage. By reason of the loss described above, Dow, and/or its corporate affiliates on whose behalf it acts, suffered a loss, and incurred substantial additional other expenses, for which Stolt is legally liable. Dow brings this action on its own behalf and as agent or trustee on behalf of all parties who may be or become interested in the subject Shipments as their respective interests may ultimately appear, and Plaintiffs are duly entitled to maintain this action.

13. Plaintiffs and their assureds have performed all conditions on their parts to be performed.

14. By reason of the foregoing, Plaintiffs has sustained damages, as nearly as can now be estimated, no part of which has been paid although duly demanded, in the amounts up to or exceeding those amounts indicated on the attached Schedule, in a total sum estimated to be up to or exceeding U.S. $750,000.00.

## FIRST CAUSE OF ACTION

## **TO COMPEL ARBITRATION**

15. Plaintiffs incorporate herein by reference all of the preceding allegations and all of the allegations below.

16. By reason of the foregoing, Stolt was obligated under terms governing the Contracts of Carriage, Charter Parties and/or Bills of Lading identified in the attached Schedule, to arbitrate Plaintiffs' claims for loss and damage to the Shipments.

17. Stolt has not submitted to arbitration of Plaintiffs' claims for loss and damage to the Shipments.

18. By reason of the foregoing, the Stolt has caused damage to Plaintiffs, and to the others on whose behalf Plaintiffs sue, by failing to submit to arbitration of Plaintiffs' claims, and Plaintiff therefore requests that the Court enter an Order compelling Stolt to arbitrate the disputes pursuant to the arbitration clauses of the Bills of Lading, Charter Parties and/or Contracts of Carriage.

## SECOND CAUSE OF ACTION

## **BREACH OF CHARTER PARTY OR OTHER MARITIME CONTRACT**

19. Plaintiffs incorporate herein by reference all of the preceding allegations and all of the allegations below.

20. By reason of the foregoing, Stolt was a carrier pursuant to the Charter Parties and/or other maritime contracts of carriage identified in the attached Schedule, and as such was a private carrier of merchandise by water for hire, and breached its duties as such under the Bills of Lading, Charter Parties and/or Contracts of Carriage, and/or under the applicable transportation contracts.

21. By reason of the foregoing, the Stolt has caused damage to Plaintiffs, and to the others on whose behalf Plaintiffs sue, in an amount, as nearly as can now be estimated, up to or exceeding those amounts indicated on the attached Schedule, in a total sum estimated to be up to or exceeding U.S. $750,000.00.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT AND/OR DUTIES UNDER COGSA, 49 U.S.C. § 30701

22. Plaintiffs incorporate herein by reference all of the preceding allegations and all of the allegations below.

23. By reason of the foregoing, Stolt was a common carrier of merchandise by water for hire, and/or otherwise was a carrier of merchandise and/or freight forwarder and/or broker and breached its duties as such under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, 49 Stat. 1207, and/or other applicable laws and/or under the applicable transportation contracts.

24. By reason of the foregoing, the Defendant has caused damage to Plaintiffs, and to the others on whose behalf Plaintiffs sue, in an amount, as nearly as can now be estimated, up to or exceeding those amounts indicated on the attached Schedule, in a total sum estimated to be up to or exceeding U.S. $750,000.00.

### FOURTH CAUSE OF ACTION

### BREACH OF BAILMENT OBLIGATIONS

25. Plaintiffs incorporate herein by reference all of the preceding allegations and all of the allegations below.

26. Stolt was acting as bailee of the Shipments at the time of the loss. Stolt was thereby, or through its contractors, agents, servants or sub-bailees, a bailee who warranted

and had a legal duty to safely keep, care for and deliver the said Shipments in the same condition as when entrusted to it, and to perform its services as a bailee or to ensure that those services were performed with reasonable care and in a non-negligent and workmanlike manner. Stolt breached those bailment obligations and negligently failed to deliver to Plaintiff, and/or Plaintiffs' assureds, and/or their designees, the Shipments in as good condition as when entrusted to them.

27. By reason of the foregoing, Stolt has caused damage to Plaintiffs, and to the others on whose behalf Plaintiffs sue, in an amount, as nearly as can now be estimated, up to or exceeding those amounts indicated on the attached Schedule, in a total sum estimated to be up to or exceeding U.S. $750,000.00.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE/GROSS NEGLIGENCE

28. Plaintiffs incorporate herein by reference all of the preceding allegations and all of the allegations below.

29. Stolt, by its negligence and/or gross negligence, including its negligent entrustment/failure to carefully select its subcontractors, caused the damage to the Shipments. The facts indicate that Stolt may also well have failed to use reasonable care in handling the Shipments and/or in other ways which will be elucidated in discovery. Stolt therefore improperly failed to deliver the Shipments to the consignees, or their designees, in as good condition as when entrusted to them.

30. By reason of the foregoing, the Stolt has caused damage to Plaintiffs, and to the others on whose behalf Plaintiffs sue, in an amount, as nearly as can now be estimated, up to or exceeding those amounts indicated on the attached Schedule, in a total sum estimated to be up to or exceeding U.S. $750,000.00.

## SIXTH CAUSE OF ACTION

### **UNSEAWORTHINESS**

31. Plaintiffs incorporate herein by reference all of the preceding allegations and all of the allegations below.

32. As the owner, operator, disponent owner, beneficial owner and/or manager of the M/V Stolt Groenland, and/or as carrier issuing bills of lading for carriage of cargoes aboard the M/V Stolt Groenland, Stolt was, *inter alia*, responsible for properly manning, maintaining and repairing the vessel and for otherwise exercising due diligence to ensure that the vessel was seaworthy, properly staffed with a properly trained crew, and fit to carry cargoes that were delivered to and loaded on board the M/V Stolt Groenland during extended ocean voyages with the types and quantities of cargo aboard, including dangerous cargoes, and such duties of Stolt were nondelegable duties for which Stolt remains at fault despite Stolt's use or employment of, *inter alia*, agents, employees, subcontractors or others.

33. Prior to, and at all times relevant hereto, the Defendant Stolt failed to exercise due diligence to make the M/V Stolt Groenland seaworthy. The M/V Stolt Groenland was at all relevant times not fit to undertake the service in which she was engaged. The losses suffered by or in connection with the Shipments were caused in whole or in part by the Defendants' failure to exercise due diligence to make the M/V Stolt Groenland seaworthy at the commencement of the voyage.

34. The losses sustained by Plaintiffs were caused, in whole or in part, by, *inter alia*, the negligence and fault of Defendants, and/or their agents, representatives and independent contractors for whose acts and omissions they were responsible, including but not limited to, their failure to maintain the M/V Stolt Groenland in a seaworthy condition.

35. The M/V Stolt Groenland was not, at the inception of the voyage, suitable

for carriage of the cargoes that were loaded aboard the vessel for the voyage at issue in this action.

36. The Master and Officers of the M/V Stolt Groenland were improperly trained by Stolt as of the inception of the voyage, insofar as they were not instructed to monitor the temperatures of the Exploding Cargo loaded aboard the vessel periodically throughout the voyage, and in fact did not monitor such temperatures. Had said temperatures been monitored, the Master and Officers would have had sufficient warning of a temperature increase to initiate cooling and/or undertake other measures to prevent the Explosion.

37. Stolt had privity and knowledge as to the cause of the Explosion, because a similar incident had occurred a couple of weeks ealier on board another Stolt ship, the M/V Stolt Focus. On the M/V Stolt Focus another consignment of the same cargo as the Exploding Cargo was found to be overheating aboard, fortuitously at a point in time before the critical runaway temperature was reached which would cause an explosion. The Exploding Cargo on board both tankers was loaded at a similar time from the same tank in Houston, and were exposed to similar environmental conditions. The incident on board M/V Stolt Focus was not reported to the ship's Flag State or other masters in the Stolt fleet.

38. Stolt never notified the Master and officers of the M/V Stolt Groenland of the incident on the M/V Stolt Focus, nor what to do to prevent a similar incident from occurring.

39. Stolt never trained, instructed or otherwise ordered the Master and officers of the M/V Stolt Groenland to monitor the temperature of the Exploding Cargo during the voyage, to prevent it from reaching a temperature at which it poses a risk to the vessel and other cargoes and people aboard.

40. The Master and officers of the M/V Stolt Groenland in fact did not

monitor the temperature of the Exploding Cargo during the voyage, and thus never discovered that it had increased in temperature, and thus failed to prevent the Explosion from occurring, an event which could have been entirely prevented had Stolt previously utilized the knowledge it had from the M/V Stolt Focus incident, and trained its Master and Officers as to the proper care and monitoring to be given to the Exploding Cargo during the voyage at issue.

41. Stolt had actual knowledge that the Exploding Cargo could overheat and explode aboard the M/V Stolt Groenland, but withheld said knowledge from the Master and officers of the M/V Stolt Groenland prior to the inception of the voyage, and did not instruct said Master and officers as to how to store, care for, and carry the Exploding Cargo correctly, in order to avoid an explosion, loss and damage.

42. Stolt's specific knowledge that the Exploding Cargo could reach its runaway temperature and cause an explosion, as learned in the M/V Stolt Focus incident (if not already known by Stolt), constitutes its specific privity and knowledge as to the cause of the later loss aboard the M/V Stolt Groenland.

43. The Master and Officers of the M/V Stolt Groenland were otherwise improperly trained and/or otherwise not properly instructed by shoreside management as to, *inter alia*, other precautions, equipment, procedures and/or limits of the vessel, which they could have observed or undertaken during the voyage, which, had such proper training been provided, this incident would not have occurred.

44. The stow plan for the M/V Stolt Groenland on the voyage in question was improperly prepared by shoreside management so as to, *inter alia*, expose the Exploding Cargo to heat, such as to cause it to reach a temperature at which it can react, explode and/or otherwise cause damage to the vessel, other cargoes aboard, and its crew.

45. The facts indicate that Stolt may also well have breached their duties to Plaintiffs with respect to the Shipments and/or the M/V Stolt Groenland in other ways which will be elucidated in discovery.

46. The losses suffered by or in connection with the Shipments, as well as the subject casualty, resulted from causes within the privity and knowledge of Stolt, and/or its officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge are imputable to Stolt.

47. By reason of the foregoing, the Stolt has caused damage to Plaintiffs, and to the others on whose behalf Plaintiffs sue, in an amount, as nearly as can now be estimated, up to or exceeding those amounts indicated on the attached Schedule, in a total sum estimated to be up to or exceeding U.S. $750,000.00.

WHEREOF, Plaintiffs pray:

1. That process in due form of law may issue against the Defendant Stolt citing it to appear and answer all and singular the matters aforesaid;

2. That an order be entered, compelling Stolt to arbitrate this dispute pursuant to the applicable arbitration clauses on the contracts identified on the Schedules;

3. That judgment may be entered in favor of Plaintiffs against Defendant Stolt on each of the Causes of Action for the amount of Plaintiffs' damages, together with interest, costs and the disbursements of this action;

4. That this Court will grant to Plaintiffs such other and further relief as may be just and proper.

        Respectfully submitted,

        */s/ Melissa Dorman Matthews*
        **MELISSA DORMAN MATTHEWS**
        Texas Bar No. 00790603
        Southern District Bar No. 28504
        **HARTLINE BARGER LLP**
        8750 N. Central Expressway, Suite 1600
        Dallas, Texas 75231
        Tel: (214) 369-2100
        Fax: (214) 267-4271
        E-mail: mmatthews@hartlinebarger.com

        *Attorneys for Plaintiffs*

OF COUNSEL:

MALOOF & BROWNE LLC
David T. Maloof, Esq.
Kipp C. Leland, Esq.
411 Theodore Fremd Avenue - Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
E-mails: dmaloof@maloofandbrowne.com
        kleland@maloofandbrowne.com

**SCHEDULE A**

**CLAIMS**

1. Bill of Lading 415 (Blue Cube / AGCS)
    Dated August 17, 2019
    Carriage from Freeport, Texas to Ulsan, Korea
   Charter Dated July 17, 2019 between Stolt and Dow
   Contract of Carriage Dated March 26, 2015
    495.729 MT of D.E.R.(TM) 331 Epoxy Resin
     Shortage, Testing Costs, Terminal Storage:    $ 11,884.14

2. Bill of Lading SGROEV057TPW320 (BlueCube / AGCS)
    Dated August 14, 2019
    Carriage from Freeport, Texas to Zhangjiagang, China
   Charter Dated July 17, 2019 between Stolt and Dow
   Contract of Carriage Dated March 26, 2015
    105.309 MT of D.E.R.(TM) 383 LCL Epoxy Resin
     - and -
   Bill of Lading SGROEV057TPW 321 (BlueCube / AGCS)
    Dated August 14, 2019
    Carriage from Freeport, Texas to Zhangjiagang, China
   Charter Dated July 17, 2019 between Stolt and Blue Cube
   Contract of Carriage Dated March 1, 2017
    421.237 MT of D.E.R.(TM) 383 LCL Epoxy Resin
     Testing Costs, Demurrage Charges:    $ 25,529.80

3. Bill of Lading 330 (BlueCube / AGCS)
    Dated August 14, 2019
    Carriage from Freeport, Texas to Ulsan, Korea
   Charter Dated July 17, 2019 between Stolt and Blue Cube
   Contract of Carriage dated March 1, 2017
    170.876 MT of Methylene Chloride
     - and -
   Bill of Lading 331 (BlueCube / AGCS)
    Dated August 14, 2019
    Carriage from Freeport, Texas to Singapore
   Charter Dated July 17, 2019 between Stolt and Dow
   Contract of Carriage Dated March 26, 2015
    776.095 MT of Methyolene Chloride
     Filtering Costs, Return Freight,
     Replacement Freight, Testing Costs:    $204,153.77

13

4. Bill of Lading 210 (Dow)
   Dated August 16, 2019
   Carriage from Freeport, Texas to Map Ta Phut, Thailand
   Charter Dated July 15, 2019 between Stolt and Dow
   Contract of Carriage Dated March 26, 2015
   1034.31 MT of Ethoxylated Polyhydric Alcohol (EPA)
   Sample Analysis and Shipment Costs,
   Spot Tank and Operation Cost in Thai
   Tank Terminal, Thailand:                                      $ 76,677.90

5. Bill of Lading 425 (Dow)
   Dated August 16, 2019
   Carriage from Freeport, Texas to Kaohsiung, Taiwan
   Charter Dated July 15, 2019 between Stolt and Dow
   Contract of Carriage Dated March 26, 2015
   889.213 MT of MMA 50 AO-30 (MMA)
   Conversion costs, Utilities, Extra Inhibitor Costs:   $253,617.00

6. Attendance of Experts due to Casualty (Shared between Plaintiffs)
   MTD Invoice #2313                                             $ 71,526.50
   MTD Invoice #2368                                             $ 40,931.60

7. Testing and Surveying Expenses (Shared between Plaintiffs)
   Intertek Invoice                                              $  1,094.22
   Modern Marine Invoice #1                                      $ 17,500.00
   Modern Marine Invoice #2                                      $ 13,600.00
   Modern Marine Invoice #3                                      $  2,500.00
   SGS Analysis Costs                                            $  7,671.40

                                                  **Subtotal:    $726,686.33**

Plaintiffs reserve the right to claim for damages in addition to the specific damages pled above, which have or will be incurred, pursuant to the provisions of the applicable charter parties, bills of lading and/or contracts of carriage.